FRANK SKVOR, Plaintiff, v. BERTHA WEIS, HENRY WEIS,
     her husband, GEORGE BEAR, MARY BEAR, his wife,
     SETH W. BEAR, MINNIE BEAR, his wife, HARRIET A.
     KULP, PHIA ELIZABETH BEAR, JESSE R. KEMPER,
     LILLIAN E. LEGLER, LILLA ANNA KEMPER, JOHN
     ALBAUGH, defendants, Appellants.

New trial on petition: FRAUD. The plaintiff in this action claimed
  1 to have purchased the undivided interests of all the heirs in cer-
     tain real estate of a decedent prior to a partition sale of the same,
     but after decree, and instituted action for specific performance of
     the contract, making the purchaser at the partition sale a party.
     The heirs assured the purchaser that the suit was not in good
     faith and that they would defend it and he entered no defense
     thereto. Some of the heirs made defense and default was entered
     against others and the purchaser, but later the decree against the
     the heirs only was set aside. Plaintiff failed to prove his case
     but entered into a secret agreement with the heirs for a sale of
     the land to him and decree was entered based upon this contract.
     *Held,* that the default against the purchaser was of no avail to
     the plaintiff, as he was not entitled to any relief against him;
     that the decree was a legal fraud on him and he was entitled to
     a new trial on petition

**Same:** NEGLIGENCE OF PETITIONER. It is also held that the purchaser at the partition sale was not negligent in permitting default to be taken against him; and that as plaintiff is bound by the allegations of his petition, which did not warrant the decree entered against the purchaser, he can not avail himself of such claimed neglect.

**Same.** Nor did the fact that, subsequent to the default of the purchaser and decree against him, the plaintiff filed an amendment alleging that the defendant heirs had no further right to defend, because the purchaser had acquired their title and plaintiff had obtained an adjudication against him, tend in any manner to aid the plaintiff; but the subsequent decree based in part upon the amendment rather emphasized the wrong done. And the two decrees against the purchaser, in view of their provisions and the method by which they were obtained, constitute in effect but one adjudication and a legal fraud against which the purchaser is entitled to relief by way of a new trial on the merits of the case.

*Appeal from Linn District Court.*—HON. MILO P. SMITH, Judge.

WEDNESDAY, JANUARY 17, 1912.

PETITION for a new trial under the provisions of section 4091 et seq., of the Code. The petitioner is John Albaugh, one of the defendants in the above-entitled original case. His petition was denied by the trial court, and he has appealed.—*Reversed.*

*Deacon, Good, Sargent & Spangler,* for appellant.

*Lewis Heins,* for appellee *Frank Skvor.*

EVANS, J.—The determination of the petition for a new trial presented on this appeal involves a consideration of the proceedings had, not only in the original case above entitled, but of a certain partition case pending prior thereto. The original case in which the present petition

for new trial was filed was a suit in equity for specific performance of an alleged oral contract to convey land. The partition case was entitled *"Bertha Weis v. George Bear et al."* The parties to the partition suit were the heirs at law of one Christian Bear. Such case involved no controversy, and the same attorney represented all interests therein. Prior to 1908, a formal decree had been entered in the partition case fixing and confirming the shares of the respective parties and ordering a sale of the real estate involved. Henry Weis, the husband of the plaintiff therein, was appointed as referee and ordered to sell the premises at public or private sale, except that he was forbidden to sell at private sale for less than the appraised price. The property consisted of a farm of one hundred and four and one-half acres and was duly appraised at $125 per acre. On November 19, 1908, the property was regularly sold at public sale by the referee for $113 per acre to John Albaugh, the petitioner herein. The sale and deed were duly reported to the court and duly approved on November 20, 1908, and one-third of the purchase price was paid as provided by the terms of the sale. On November 28, 1908, Albaugh was made a defendant in the action which is entitled as above, by the service of original notice upon him. The original petition in such action was filed by plaintiff Skvor on October 30, 1908. The action was brought by Skvor as plaintiff against all the heirs at law of Christian Bear as defendants. The averments of Skvor's original petition were that in August, 1908, he purchased the land involved in the partition suit by oral contract with Henry Weis as agent for the various owners of the undivided shares. On November 20, 1908, an amendment to the petition was filed naming John Albaugh as an additional defendant. In this amendment it was averred that Skvor's action was pending on November 19, 1908, and that: "John Albaugh was bound to take notice, and said John Albaugh bought subject to the rights of said

Frank Skvor, plaintiff herein. This amendment is filed bringing in as additional party John Albaugh, so that he may be bound by the decree to be rendered in this action." Albaugh carried the original notice which had been served upon him to the attorney for the heirs in the partition suit, and was assured that Skvor's claim was a "bluff," and that defense against it would be made. All the defendant heirs were nonresident except Bertha Weis, who was the plaintiff in the partition suit. On or prior to the April term, 1909, Bertha Weis and Henry Weis, her husband, appeared to said action. Original notice had been served by publication upon the nonresident heirs in time for the April, 1909, term. On April 15, 1909, the plaintiff took a decree by default against the nonresident heirs and John Albaugh, but no decree was obtained as to Bertha Weis and Henry Weis, and the case was continued as to them. Later in the term a motion was filed for the defaulted heirs to set aside the decree and the default, and this was later sustained, and such decree was set aside on such motion. Such motion did not in terms refer to John Albaugh, nor was any reference to Albaugh made in the order setting the decree aside. Plaintiff's contention, therefore, is that such decree has always remained in full force and effect as to Albaugh. After the setting aside of such decree, all the defendant heirs joined issue with the plaintiff denying the alleged contract. Thereupon the cause came on for trial January 13, 1910. The defendant heirs were not present in person at the trial, but were represented there by counsel and by Henry Weis. Pending the trial, and after the plaintiff's evidence had been introduced and he had rested, it was orally agreed before the court that a decree might be entered for the plaintiff, which was accordingly done. The decree, as entered, purported to enforce the original alleged contract sued on. This alleged agreement was that the plaintiff was to purchase the land at $100 per acre. The real agreement, however, between the parties

whereby plaintiff obtained his decree, was made on January 14, 1910, pending the trial, and provided that Skvor should pay $113 per acre for the land. The agreement between Weis and Skvor as to the price of $113 existed only in parol between them and was not included in the decree. Albaugh first learned of it after the adverse decree had been announced, but before the formal decree had been entered of record. At about the same time, he first learned also that a decree had been entered against him, April 15, 1909. At the same term and on February 1, 1910, he filed his petition herein asking that the decree of April, 1909, and the decree of January, 1910, be both set aside, and that a new trial be granted. He based his petition upon the ground that fraud was practiced in obtaining the same, being the second ground specified in section 4091 of the Code. Subsequently all the defendant heirs except Bertha Weis joined him in such petition.

It is the contention of the plaintiff appellee that the appellant Albaugh was not a party to the trial of January, 1910, and is therefore in no position to obtain a new trial so far as such proceeding is concerned. He contends, also, that the petitioner was in default in 1909, and that the decree then entered against him was conclusive, and that he has alleged no fraud in relation thereto. It is also urged that the petitioner was neglectful in suffering default, and that he has never excused such default. Some other matters are urged which we will notice later in the discussion.

The theory presented by plaintiff's petition was that the alleged contract for the purchase of the property antedated the referee sale, and that the filing of his petition on October 30, 1908, operated as a notice of lis pendens to any purchaser at the referee sale. This theory appears to have been adopted by Albaugh. For the purpose of this appeal, therefore, and for such purpose only, we will adopt the same theory without in any manner announcing it as

a correct rule of law. Neither do we now intimate that
it is an incorrect rule of law. Whether it might not be
said that the prior pendency of the partition proceedings
operated as a notice of lis pendens to the plaintiff, and
whether he himself was not bound by the orders of the
court entered in that case, is a question with which we
will not now deal.

We may say, however, that, if Skvor had purchased
only the undivided interest of some of the heirs, such a
purchase would be subject to the partition proceedings and
would only subrogate him to the rights of his grantors in
such partition proceedings. Such a purchase would not
obviate the necessity of a partition sale, nor would it pre-
vent the passing of title to the purchaser at the referee
sale. If, however, the purchaser should buy all the undi-
vided interests, thus uniting in himself the complete title
and obviating the necessity of a partition sale, it may be
that in such a case he could ignore the partition proceedings
and contest the right of ownership with a subsequent pur-
chaser at a referee sale. We do not decide that question.
The suggestion already made, that the purchaser of only
an undivided part of the property could not, by the mere
fact of such purchase, prevent the passing of the complete
title to the purchaser at the referee sale, has some im-
portance in the later discussion herein. Giving to the
plaintiff the benefit of the assumption that he should pre-
vail if he could prove a prior purchase in August, 1908,
of the complete title, yet a failure to show that he had
acquired the complete title would defeat him as against
Albaugh. It would not avail him as against Albaugh to
show that he had acquired the interests of only some of
the heirs.

The foregoing general statement is perhaps sufficient
to enable us to turn more to the details of the various
stages of the proceedings complained of.

I.  The regularity of the partition proceedings leading

up to the sale is conceded. Plaintiff's original petition alleged an oral contract entered into in August, 1908, for the purchase of the land, and asked specific performance thereof. It was also alleged that such contract was made with George T. Hedges & Co., and that Hedges & Co. were authorized to make such sale by Henry Weis, and that he was authorized by the heirs at law. The petition alleged a refusal to perform. It alleged that the contract price was $10,500, and that a check of $100 had been paid to Hedges & Co. The petition also tendered payment of the alleged purchase price. The later amendment which made John Albaugh defendant has been above set forth. On April 15, 1909, Albaugh was in default, and the plaintiff was entitled to have such default entered of record. Did such default enlarge the plaintiff's rights as against Albaugh? Was he entitled to take a decree as against Albaugh, regardless of his rights as against answering defendants? Albaugh was not a party to the contract sued on. Whatever rights the plaintiff had against him were only incidental to his rights against the principal defendants. If he was not entitled to specific performance as against the heirs at law, he was entitled to no relief against Albaugh. In such a case the default of Albaugh did not increase the plaintiff's right. The plaintiff not only took entry of default against Albaugh on that date, but he took a formal decree against him and against some of the defendant heirs at law. This decree was an adjudication for the time being that the plaintiff was entitled to enforce his alleged contract against some of the heirs. As indicated heretofore, this was not of itself sufficient to entitle the plaintiff to relief against Albaugh. To say the least, therefore, the entry of the decree against Albaugh in April, 1909, was clearly irregular and improper practice. Such decree, however, was later set aside upon motion of the defaulted defendant heirs at law as heretofore indicated. The con-

*1. NEW TRIAL ON PETITION: fraud.*

tention of the appellant is that the effect of such order setting aside the decree was to vacate the same *in toto,* even though Albaugh was not mentioned by name. Such decree found that plaintiff was entitled to a conveyance of the property upon the payment of $10,400, and appointed the clerk of the district court a commissioner to make the conveyance. It also provided as follows: "It is further ordered, adjudged, and decreed that this decree is to be firm and effectual as against the defendant, John Albaugh, it being specifically found and so ordered, adjudged, and decreed that the said John Albaugh was duly and legally served with original notice in this action; that he acquired his interest subsequent to the rights of the plaintiff and with knowledge thereof; and that said original notice was served on him prior to the time he paid the purchase price for said land [and if said property has been conveyed to said John Albaugh, then, in that event, the defendant, John Albaugh, is hereby directed to convey said title to said real estate to the plaintiff, Frank Skvor]." The brackets are ours.

It is very clear that the setting aside of this decree as to the heirs at law left nothing operative against Albaugh, unless it be contained in the bracketed portion which we have indicated. The contention of appellee is that such part of the decree was a complete and independent adjudication against Albaugh, and that it was never set aside. We will consider that question later in another connection. After the setting aside of the decree and default, the heirs at law all answered denying the alleged contract sued on. Upon the issue so joined, the case was brought to trial as above indicated on January 13, 1910. The plaintiff introduced his evidence and rested. The transcript of such testimony was introduced in evidence by the appellee on the trial of this proceeding. We may as well say here that such testimony falls far short of proving the plaintiff's alleged contract. Upon the testimony so

introduced by the plaintiff he could not have justly prevailed in the suit. It was at this point that the alleged secret agreement was entered into between the plaintiff and Henry Weis, whereby the plaintiff was permitted to take the decree. It is undisputed that the agreement was made at this time as heretofore stated. Such agreement amounted to collusion as against Albaugh if his legal rights were affected by it. This last decree does not purport to award any relief in express terms as against Albaugh. The theory of the plaintiff is and was that he already had obtained a decree against Albaugh at the April, 1909, term, and that, if he could now obtain a decree against the heirs at law, the two decrees together would furnish him the complete relief for which he prayed. As we read these two decrees and undertake to construe them, we find it very difficult to determine whether they are effective to award to the plaintiff any relief as against Albaugh. For the purpose of this appeal, however, we will adopt the view of the appellee to the extent of assuming that the two decrees as they stand have the effect of a complete adjudication as against Albaugh. This effect must be found in the first instance, if at all, in the bracketed portion of the first decree which we have quoted above. There were no allegations in the petition or in the amendment which warranted this provision of such decree. If this proviso is fairly capable of the use and construction which the plaintiff contends for, its incorporation in the decree was a legal fraud upon the defaulted defendant. The case is ruled at this point by *Larson v. Williams,* 100 Iowa, 110. It may be that the fraud was neutralized and rendered noninjurious by the setting aside of the decree, but the appellee does not so contend. He contends for the continued existence of the decree as to Albaugh, and we will therefore consider the question from that point of view. The petition for new trial was filed within one year as provided by statute. It is argued, however, that ap-

pellant does not charge fraud at this point. The appellant's petition is not as specific in that respect as it might be. It does, however, recite all the facts which we have already stated, and charges fraud in their final culmination, and asks that both decrees be set aside on that ground. It is quite impossible to consider the effect of these two decrees separately without departing from appellee's own theory of his right. The record is confusing and complicated, but in its last analysis there was but one case and one adjudication. The beginning of the confusion was the irregularity of taking a decree against Albaugh before it could be known whether the plaintiff was entitled to a decree against him. Taking the two decrees together, and considering the circumstances and methods by which each was obtained, we think they amounted to such fraud as to entitle the petitioner to a new trial. Up to the moment of the collusive agreement between Weis and the plaintiff, the heirs at law were defending in good faith. Albaugh was subpœnaed as a witness and was present at the trial as such. He learned then for the first time that a decree had been taken against him. He must be presumed to have known that he was in default nor would he have any right to complain of any proper advantage which had been obtained by reason of such default.

Notwithstanding such default, he was entitled to equity as the court should ascertain it. Code, section 3793. Nor was the plaintiff entitled to any greater relief against him than against the answering defendants. *Curtis v. Smith,* 42 Iowa, 672.

On the other hand, it may be said that the heirs at law were not bound to defend on behalf of Albaugh. But that is not the question involved here. The heirs at law through their attorney promised to defend. They did interpose a defense in good faith. Under these circumstances, Albaugh suffered default. He wronged no one in so doing. If the heirs at law had been negligent and unsuccess-

ful in their defense, he would have borne the consequence. Up to the point of the collusive agreement between Weis and the plaintiff, the interests of the heirs at law were adverse to those of the plaintiff and in harmony with the rights of Albaugh. By such agreement these relations were changed. The net result was that the plaintiff obtained his decree, not because he had proved his alleged contract of August, 1908, but by virtue of the new contract entered into January 14, 1910. Albaugh's rights clearly antedated such new contract. When he suffered default, such new contract was not in existence. He never had an opportunity to defend against it.

II. It is urged by appellee that Albaugh was guilty of negligence in suffering default, and that such negligence was responsible for all the irregularity in the case. The

2. SAME: negligence of petitioner.

following excerpt from appellee's brief is illustrative of his contention at this point: "It was Albaugh's duty to appear at the January term, 1909, to answer to the petition of the plaintiff. Albaugh did not do so. He might have appeared at the April term and answered at the April term, but he did not do so. He himself brought about unfavorable result of the litigation so far as the defendants are concerned. He permitted default and judgment to be entered against him by his own neglect, and his own negligence in not appearing and not answering, brought about the disastrous result which resulted to the other defendants, the Bear heirs, at the subsequent January term. "Can he now say that he is entitled to relief from either one of the decrees by reason of any pretended action taken on behalf of one or several of the Bear heirs to protect themselves against the unfortunate situation in which Albaugh, by his neglect, had placed them?" It is also urged that he has never excused such negligence. This argument misses the mark. Appellant is not complaining of any proper advantage resulting to appellee by reason of his default.

To suffer default is not of itself negligence. This is especially so where the relief prayed against a defaulting defendant is only incidental to, and dependent upon, plaintiff's rights as against another as principal defendant. A defendant in default is not an outlaw. He is still entitled to "equity" as it shall appear from the "pleadings and proofs." Code, section 3793. The plaintiff is still bound by the allegations of his petition. The taking of the decree against Albaugh in April, 1909, before obtaining a decree against the principal defendants, was not warranted by any allegation in plaintiff's petition. Appellee was responsible for this wrong, and it will not avail him to say that appellant ought to have been there to stop him.

III. On January 10, 1910, the plaintiff appellee filed an amendment to his petition. The substance of its allegations was that the defendant heirs at law had no further right to defend because their title had been

3. SAME.

acquired by Albaugh, and that plaintiff had obtained an adjudication against Albaugh by the decree of April, 1909. The contention presented by such amendment is now made before us. This contention serves to emphasize the wrong which was perpetrated either by the decree of April, 1909, or by the later decree of January, 1910. According to this contention, the default of Albaugh was fatal to all the defendants from the moment that the decree was entered against him. And this, even though some of them were then defending. It is true that some of the heirs at law were adjudged in default, and a decree entered against them. But the decree and the default were afterwards set aside, and they did then defend. Of what avail was it to set aside the decree as to such defendants if they were already barred by the entry of the decree against Albaugh? The decree entered in January, 1910, contained the following paragraph: "And the court having inspected the pleadings in said cause, consisting of the plaintiff's petition and the various amendments thereto

and the supplemental petition and all the various answers of the defendants on file and the plaintiff's reply, and having considered the evidence introduced by the plaintiff, documentary and oral, and considering the admissions and concessions made by counsel for the defendants orally at the trial, and considering the decree heretofore entered, and in view thereof, it is found, so ordered, adjudged and decreed." The foregoing is the only paragraph of the decree which indicates the ground upon which it was entered. It would appear therefrom that the very decree which was improperly entered against Albaugh in April, 1909, was treated as an adjudication against the principal defendants in January, 1910, and that the new agreement with the plaintiff for $113 per acre took the form of "admissions and concessions" made "orally at the trial." That is to say, the January decree was a consent decree. It was based in part, at least, upon an amended petition filed after the default of Albaugh and without notice to him, and was based also upon a new contract which did not exist when such default was entered. In this manner plaintiff obtained a decree which he could not have obtained upon the merits of his original case as they appear upon this record.

On January 18, 1910, plaintiff's attorney wrote Albaugh a letter, which is a good summary of plaintiff appellee's contention, and we set it forth herewith:

Cedar Rapids, Iowa, Jan. 18, 1910.   John Albaugh, Cedar Rapids, Iowa—My Dear Sir:   Thinking perhaps you may not be advised of the results of the litigation in the case of Frank Skvor v. Bertha R. Weis et al., and as you are a party vitally interested in this matter, as your contract seems to be outstanding to pay $113.00 per acre for this land when Frank Skvor's contract only calls for practically $100.00 per acre, and you may be in for the balance, at least it appears so on the fact of the papers, I write you.   Now, this decree that was just entered, settles the proposition that Frank Skvor is the owner of the land, and the decree not only directs you as the owner

of the legal title to convey to Frank Skvor, but also directs all the heirs of Christian Bear to convey to Frank Skvor within thirty days from this date. The time for you to convey is now up, as the decree was entered against you last April. Now, I advise you to see Mr. W. T. S. Bear, as I have been informed that you have been acting for him, to arrange this matter as speedily as possible. The whole matter ought to be adjusted in the course of the next few days, not only that Mr. Skvor, the owner of the land, may know what to do, but so that W. T. S. Bear may also know what to do, as the decree requires the settling the title within thirty days from today, and requires the giving of possession not later than the 1st day of March. You may consult your attorneys if you see fit, preliminary to adjusting this matter, but in my judgment there is nothing to do excepting to comply with the decree of the court, and the main reason for this is the fact that decree was entered against you by default last April, and the time for setting aside a decree entered on default has long since been past, and as you were the owner of the property according to the records of the district court of Iowa in and for Linn county, that decree against you was final and conclusive and was the main ground upon which I relied in obtaining the present decree against the Bear heirs. Of course, you will take the advice of your counsel, and in my judgment, and my advice on the subject will cost you nothing, is that you and your wife had better deed the property right over to Mr. Skvor, and my main reason for saying so is this, that had it not been for your default, it might have been possible for the Bear heirs to have defended successfully, but by reason of your being the owner of the property and decree having been rendered against you at the last April term of the court, and the time having passed in which to set aside the decree, the Bear heirs did not have much show, as they were no longer the owners of the property; but whatever you do, whether you take my advice or not, it will be for the benefit of all parties to act promptly. I could probably explain the matter to your attorney so as to enable him to give more prompt advice if you and he should desire to have a consultation with me about the matter. You will remember that I told you the other day that you may be in for at least thirteen hundred to fourteen

hundred dollars on this proposition, as the Bear heirs could undoubtedly collect from you at the rate of $113.00 per acre, providing it was your fault that they lost this litigation, and you could only recover from Mr. Skvor $10,500, as that was the price he was to pay for the land, and he could not be compelled to pay any more to you.

However difficult it may be to analyze the relative rights of the parties in this case, it is manifest from the foregoing letter that there was a grave miscarriage of justice accomplished in some way. The situation was even worse for Albaugh than is depicted in this letter. At the time of the purchase of the property by Albaugh at referee sale, he paid in $3,280 of the purchase price. There is no provision in either decree for returning to him the amount paid, nor is there any provision which entitles him to receive any part of the purchase price from Skvor.

It is our conclusion that the two purported decrees are so related, both in their provisions and in the methods by which they were obtained, that they constitute in effect one adjudication, and that the petitioner is entitled to relief as against both of them, in that the method of their obtaining was a legal fraud upon him. And this is so regardless of whether actual fraud was intended by the successful parties. Upon that question we need not pass. Both decrees should be set aside and a new trial be granted. In view of the changed relation of the parties by reason of the agreement of January 14th, between plaintiff and Henry Weis, and of the amendment to petition filed after default, we think the petitioner should be permitted to defend the case on its original merits, and that his former default should be set aside for that purpose.

The order denying new trial must therefore be *reversed*.