DORA E. SPAULDING, Administratrix, Appellee, v. WILLARD D. MILLER et al.; Appellants.

No. 41794.

JULY 18, 1933.

REHEARING DENIED OCTOBER 28, 1933.

Wilson & Wilson, and Stipe, Davidson & Davidson, for appellants.

Ferguson & Ferguson, for appellee.

DONEGAN, J.—At the outset of this case, we are confronted with several motions filed by the parties after the briefs and arguments in the main case had been filed. These motions were ordered sub-

mitted with the case, but, in view of the decision which we reach, it becomes unnecessary to consider them in this opinion.

 I. The first error relied upon by appellants for reversal is as follows:

"The court erred in overruling defendants' motion for directed verdict in that plaintiff's intestate was guilty of contributory negligence as a matter of law."

Appellee challenges the right of this court to consider this alleged error on the ground that such error, if any, occurred during the trial of the case, that there was no appeal from the judgment and verdict, and that the specification of error relied upon for reversal has no reference whatever to the court's order overruling the motion for new trial and motion for judgment notwithstanding the verdict. Appellee calls our attention to the fact that the verdict in this case was rendered October 31, 1931; that thereafter the appellants filed a motion for new trial and motion for judgment notwithstanding the verdict, which motions were overruled by the court on the 14th day of March, 1932; and that the notice of appeal, which did not include any appeal from the verdict and judgment, was filed on July 8, 1932. Appellee argues that, more than four months having elapsed from the date that verdict was rendered, and more than sixty days having elapsed from the date of the court's ruling on the motions for new trial and for judgment notwithstanding the verdict, no error committed during the trial of the case can be considered by this court on appeal. Appellee contends, moreover, that, the appeal in this case having been from the ruling on the motions for new trial and for judgment notwithstanding the verdict, any allegation of error relied upon for reversal must specify some error in connection with the court's ruling on such motions.

It seems well established by the holdings of this court, however, that, where an error occurring during the trial of a case is set out as a ground in a motion for new trial, which is overruled by the trial court, such error can be reviewed upon an appeal from the order of the court denying such new trial, even though no appeal is taken from the judgment and verdict. Mueller Lumber Co. v. McCaffrey, 141 Iowa 730, 118 N. W. 903; McElfresh v. McElfresh, 186 Iowa 994, 173 N. W. 259; Frett v. Holdorf, 201 Iowa 748, 206 N. W. 609. In Jahr v. Steffen, 187 Iowa 168, 174 N. W. 109, 110, there was involved an appeal which had not been taken within six

months (as then provided by statute) after entry of judgment, but within due time after the trial court's ruling on the motion for new trial. It appears that as a ground of the motion for new trial it was alleged that the trial court was in error in directing a verdict for the defendant at the close of plaintiff's testimony. No separate assignment of error seems to have been made in reference to the court's action in overruling the motion for new trial. In dealing with the situation thus presented, this court said:

"Appellee urges that, as no error is assigned, the ruling on the motion for new trial is not reviewable. No separate assignment of error was made, but that complained of was stated at the beginning of what is denominated the brief and argument as follows: 'The only error that can now be argued before the court is that attributable to the trial judge in directing a verdict at the close of plaintiff's testimony in favor of the defendants.' This clearly states the only ruling of which complaint is or could have been made, for the appeal was taken more than six months after judgment, but within that time after the motion for new trial had been ruled on. See Mueller Lumber Co. v. McCaffrey, 141 Iowa 730, 118 N. W. 903, to which decision the court adheres. It could not well have been stated in a more definite way, nor well have escaped attention where found."

Directing our attention to the motion for new trial filed in the case now before us, we find as the sixth ground of such motion the statement:

"That the court was in error to the prejudice of the rights of the defendants in overruling their motion for a directed verdict at the close of the introduction of evidence in this case."

The alleged error of the trial court in overruling appellants' motion for a directed verdict was therefore before the trial court when considering and acting upon the motion for new trial, and the error, if any, of the trial court in overruling this ground of appellants' motion for a new trial is properly before this court for review. Keeney v. C., B. & Q. Ry. Co., 183 Iowa 522, 167 N. W. 475.

Before directing our attention to the alleged error of the court in overruling appellants' motion for a directed verdict, it is necessary that we consider the circumstances of the accident out of which this action arose. Sheridan avenue runs east and west, and is

the principal business street in Shenandoah, Iowa. The principal business section begins on the east side of a north and south intersecting street about a block and a half west of the Elk's Café, and extends about four blocks east. The first block of this business district as one goes east on Sheridan avenue is referred to in the record as the Delmonico Hotel block, and the next block to the east is referred to as the Theatre block. In the Theatre block the first building on the south side of Sheridan avenue east of the intersecting street is the Zenith Theatre; next east of that is McFarland's store; next east of McFarland's store is the State Theatre; and next east of the State Theatre is Anderson's store, and next east of Anderson's store is the Elk's Café. Sheridan avenue is 80 feet wide from property line to property line. The sidewalks in the business district are 12 feet wide, and the paved portion of the street from sidewalk to sidewalk is 56 feet wide.

At the time of the accident in question, the south side of Sheridan avenue in the block in which the Elk's Café is situated was filled with parked cars which were parked at an angle of about forty-five degrees with the curb. It appears from the evidence that the north side of the street was also practically filled with parked cars, which were also parked at a similar angle. The parked cars occupied a space of approximately 14½ feet from the curb to the rear of such cars. On the afternoon of May 31, 1931, George A. Spaulding was riding in the rear seat of his Studebaker sedan which was driven by his son-in-law, Duane Martin. This car had entered Shenandoah on primary highway No. 3, of which Sheridan avenue is an extension. When his car reached the block known as the Theatre block, George Spaulding directed the driver to stop so that he could go to a cigar store known as Hurd or Hindman cigar store to purchase some tobacco. This cigar store is on the north side of the street about opposite the Elk's Café. When the car reached a point in Sheridan avenue about opposite the east half of the Elk's Café, the driver stopped it with the right side about 1½ or 2 feet from the rear ends of the parked cars on the south side of the street. Immediately upon the car being stopped, George Spaulding got out of the rear door on the right side, walked westward along the side of the car to the rear thereof, and then proceeded northward along the rear end of the car and two or three steps beyond the north side of the car, when he apparently saw appellants' car approaching from the west and stepped back toward the rear of his own car.

It appears from the evidence that the car owned by the appellant Willard D. Miller, and driven by his wife, Helena Miller, entered Sheridan avenue from the south on the intersecting street which runs along the west side of the Delmonico Hotel block, turned eastward and followed the Spaulding car. Both cars were traveling slowly as they went eastward, the evidence fixing their speed at from 7 to 12 miles per hour; one witness for appellee estimating the speed of the Miller car at 15 miles per hour. While thus going eastward, the Miller car continued at a distance of about 35 to 40 feet behind the Spaulding car until the latter stopped. As George Spaulding stepped out beyond the north side of the rear of his car, the driver of appellants' car first started to turn her car to her left, or toward the north, and then to her right, or toward the south.

About the time she turned her car to the right, or south, Spaulding stepped back to the rear of his car, and had reached a point about a foot west of the north side thereof when appellants' car collided with him and crushed his legs between the rear bumper of the Spaulding car and the front bumper of appellants' car. As a result of the injuries received, George Spaulding died a few days thereafter, and this action was brought by his wife, as administratrix of his estate.

The place where the Spaulding car was stopped and where George Spaulding attempted to cross the street was about 100 feet east of the intersection where pedestrians regularly crossed the street. There is some dispute as to the condition of the traffic on the street, some of appellee's witnesses stating that they saw no traffic at the time, while another of appellee's witnesses stated that "there were cars coming and going. As we entered the block down by the Delmonico Hotel we met cars frequently from that time until the time our car stopped there. We met cars almost continuously." One of appellants' witnesses stated that she was riding westward at the time of the accident and that, "at the time of the crash between the Spaulding car and the Miller car, our car was directly north of the Spaulding car and about two or three feet north of it." The place where the accident happened is about the center of the business district of Shenandoah, and the entire block was filled with parked cars on both sides of the street. By the mere act of attempting to cross the street at this place the decedent was not guilty of negligence. However, he was required to exercise a degree of care commensurate with the dangers which he might reasonably anticipate

in crossing the street at the time and place in question. Under these circumstances, the decedent's car was stopped under his direction. He immediately got out of the south door of the car, proceeded westward to the rear end of the car, and then northward to a point two or three steps out into the street beyond the north side of his car. Appellee's witness, Mrs. J. W. Miller, was seated in a parked car on the south side of the street in front of the Anderson store which adjoins the Elk's Café on the west. She was in a better position to see what occurred than any of the other witnesses who testified for plaintiff. She stated that the decedent "got out of the car and shut the door and started around the back and made several steps away from the car and looked up and saw a car coming, I suppose, and stepped back behind his car. He made two or three steps to the north and then came back to his car toward the south. He got out and shut the door and went behind his car. He didn't halt there. I didn't notice which way he was facing. He went across the street north, his face was directly to the north."

"Q. He didn't look west at all? A. Well, he did after he went a couple of steps away from his car, he looked up.

"Q. Which way? A. To the west and I suppose he seen the car coming and stepped back.

"Q. Was there a car coming from the west? A. Well I didn't see it right then.

"Q. Well did you see it any time? A. Yes, sir.

"Q. Which car was it? A. The car that hit him.

"Q. You say he looked that direction? A. Yes.

"Q. Saw the oncoming Miller car? A. Yes.

"Q. And how far was he out north of the car when he did that? A. I saw two or three steps.

"Q. Well, was that right, two or three steps? A. Yes.

"Q. And he was headed north at that time? A. Yes.

"Q. And then he turned around and retraced his steps? A. Yes.

"Q. At least two or three steps you would say? A. Back to his car. Mr. Spaulding, after he passed by the rear end of his car, looked up, looked to the west and at that time he was two or three steps north of the north side of his car. I wouldn't think that would quite take him past the middle of the street. These two or three steps would be ordinary steps a man would take in an ordinary walk.

"Q. Did you notice how he moved after he looked up and saw the Miller car coming? Could you tell the jury about how rapidly he took those steps? A. Not fast; just stepped back.

"Q. Stepped back slowly? A. Yes. Well, the Miller car came along right away after he stepped back. He stepped back not quite to the center of the rear of his car north of the center.

"Q. Did you notice when he came from behind the side of the car? Did he move right around behind and start across the street? A. Yes, as far as I can remember.

"Q. He didn't hesitate? A. No. His car was not touching the parked cars there but was reasonably close to them. I wouldn't have an idea how close to them.

"Q. Now did you notice when he came from the side of his car to the rear, whether or not he looked to the west? A. No, I don't think he did.

"Q. He didn't look up at all? A. No, sir.

"Q. Where were his eyes, as near as you can .guess? Where were they directed? A. Like anybody's getting out of a car and going around to the back.

"Q. And starting across the street? A. Yes, sir.

"Q. And not looking in either direction? A. No, sir."

Grant Bangs, another witness for appellee, who was on the north side of the street east of the scene of the accident, and, as he says, about 30 feet therefrom, testified:

"He went around behind his car to its rear and then started across the street north. He went about two steps then he backed up. I noticed that he looked west at that time. He got about two steps north of his car. He was looking west all the time. He was looking west when he passed behind his car and he was looking west when he passed those two steps north of his car into the street. When he got a couple of steps north of his car he backed up."

It is quite apparent that there is a conflict between these two witnesses as to when the decedent looked to the westward. If the testimony of Mrs. Miller is correct, the appellee's decedent paid no attention to his surroundings until he reached a point two or three steps out into the street to the north of his car. If the testimony of the witness, Bangs, is correct, the decedent was looking westward all the time as he proceeded around his car and out into the street.

There is no dispute in the testimony that the appellants' car was following the Spaulding car at a distance of from 30 to 40 feet, and, during the time required for the decedent to get out of his car, close the door, pass around the rear end thereof, and two or three steps out into the street beyond the north side thereof, it is quite apparent that the distance between the cars must have been reduced by several feet. If the decedent did not pay any attention to this car, which must have been within a few feet of him as he went around the rear end of his own car and into the street, he would have been guilty of negligence. If he did look, he must have seen the car approaching, and, if he still continued to proceed out into the street, it is difficult to say how this would have excused him from the charge of negligence in thus knowingly going into a place of danger.

The driver of appellants' car attempts to explain her conduct in first turning her car to the left by saying that as the decedent came out from behind his car she intended to pass to the north of him. She explains her action in then turning her car to the right by stating that there was another car coming from the east which made it impossible for her to go around the decedent to the north. And she explains her final attempt to turn her car to the left by saying that as decedent stepped behind his car she again tried to turn to the left to avoid hitting him. In this connection it may be noted that, taking into account the 12 feet of sidewalk, the 14½ feet occupied by the parked cars, the 1½ or 2 feet between the rear of the parked cars and the right side of the Spaulding car, the width of the Spaulding car, and the two or three steps to the north thereof which the decedent, Spaulding, had taken, he must have been near the center of the street when he stopped and began to return toward his car. If another car was approaching from the east, it is quite possible that the driver of appellants' car would have found difficulty in passing to the north of Spaulding. Whether or not the explanation given by the driver of appellants' car is sufficient to excuse her from the charge of negligence, we are not now called upon to determine. The question with which we are now dealing is that of the contributory negligence of the decedent. The burden was upon the appellee to prove the freedom of the decedent from contributory negligence. The undisputed facts show that he attempted to cross the street at a point other than the regular pedestrians' crossing at the intersection; that he attempted to cross in a congested and busy portion of the street; that he stepped out to a point near the middle

of the street; that he either paid no attention whatever to the approach of appellants' car or, if he did see it, with full knowledge that it was approaching and within a few feet of him, he stepped directly into its path. In the case of Sheridan v. Limbrecht, 205 Iowa 573, 218 N. W. 278, 279, in which the facts were very similar to this case, we said:

"If he had looked toward the east * * * he must have seen the defendant's car. If he failed to see it, it must have been because he did not in fact look. * * * He had a right to cross the street at any place, * * * but this right does not absolve him from the duty of ordinary care. In so doing, he knew that he was incurring danger. The vigilance required by ordinary care is proportionate to the known danger present. In making this crossing at an unusual place, he knew that he was likely to encounter passing automobiles, and ordinary care required of him that he should be on the lookout against collision with them. As between a pedestrian and an automobile on the street, the pedestrian has the better opportunity to avoid collision. If an automobile is about to pass in front of him, he can readily stop. But if he attempts to pass in front of an automobile, the problem is more difficult. In this case the automobile was proceeding at 15 miles an hour. When the plaintiff proceeded to cross its path the automobile was in plain view of him, and was necessarily within a very few feet from him. He could not have failed to see it, if he had looked. No excuse is shown for his failure to look. We think he was clearly guilty of contributory negligence."

See, also, Whitman v. Pilmer, 214 Iowa 461, 239 N. W. 686.

In our opinion, the decedent was guilty of contributory negligence, and appellants' motion for a directed verdict should have been sustained on that ground.

II. Other errors relied upon by appellants for reversal have reference to instructions given and refused by the court, to alleged misconduct of counsel and of the jury, and to the question whether the negligence of which it is claimed appellant Helena Miller was guilty was the proximate cause of the accident. In view of the decision reached, it becomes unnecessary to consider any of these questions.

For the reasons given, the judgment of the district court is reversed.

ALBERT, C. J., and EVANS, KINDIG, CLAUSSEN, and ANDERSON, JJ., concur.