E. D. Rayburn and P. A. Rayburn, dba Iowa City Distribu-
tion Company, Appellee, v. J. B. Maher, dba Maher 7up
Company; Richard Frazee and E. F. Chouquette,
Appellant.

No. 44777.

October 24, 1939.

Rehearing Denied January 12, 1940.

James B. Ryan and Lehan T. Ryan, for appellant.

Will J. Hayek and Hallagan, Fountain, Stewart & Cless, for appellee.

Bliss, J.—The plaintiff-partnership filed its petition at law, claiming damages for breach of contract against J. B. Maher, doing business as the Maher 7up Company, and Richard Frazee and E. F. Chouquette. The petition was filed in the office of the clerk of the district court of Johnson county, on August 31, 1936, for the September term of that court, commencing on September 21, 1936. An original notice entitled, as herein set forth, directed to J. B. Maher, Richard Frazee and E. F. Chouquette, claiming damages of $1,500 against each of them, for breach of an oral contract, making plaintiff exclusive agent for the sale of defendant's product, was served on Maher in Polk County, Iowa, on August 13, 1936. A like notice was served on "J. B. Maher, doing business as the Maher 7up Company" in Johnson County, Iowa, on September 2, 1936, by service on E. F. Chouquette, "he being a member of said Company." Another original notice entitled and directed the same as the above-stated notices, reciting: "that there is now on file in the office of the clerk of the District Court of Johnson County, State of Iowa, a petition of the above named plaintiff alleging that E. F. Chouquette is operating and doing business representing the defendant, Maher 7 Up Company; That said E. F. Chouquette is a resident of Iowa City, Johnson County, Iowa, with an office and distributing point and warehouse of said 7 Up product; Plaintiff demands judgment against you and each of you for the sum of $1500.00 because of damages sustained by him in your breach of contract and interference with plaintiff's business established in the vicinity of Johnson County, Iowa", for the November, 1936, term of the Johnson county district court convening on November 16, 1936, was served upon Chouquette, alone, on October 31, 1936. No notice was ever served on Frazee, so far as the record before us shows.

Plaintiff's petition alleged: That the Maher 7up Company was owned by J. B. Maher, and was operating and doing busi-

ness in Johnson County, Iowa, through its agents, Frazee and Chouquette, with an office, distributing point and warehouse in Iowa City, in said county; that on or about May 25, 1936, plaintiff entered into an oral agreement with the defendant, Maher 7up Company, whereby the defendant granted to the plaintiff an exclusive right to handle the beverage product, 7up, and promised to pay plaintiff a brokerage commission of 20 cents a case for 7-ounce and 12-ounce bottles, and 40 cents a case on 24-ounce bottles, and in addition to give plaintiff free one case, valued at $1.10, for every ten cases sold; that the agency was to cover Johnson and Washington counties; that under said contract the plaintiff, was at its own expense, to advertise and create a market for the product in said territory; that the future profits from said business were in the contemplation of both parties and were the inducing cause for plaintiff to enter into said contract; that defendant shipped said merchandise to the plaintiff under said agreement, until about July 17, 1936, after which time the defendant Maher refused to make further shipments to plaintiff; that said petition further stated:

1.

"That said defendant, J. B. Maher and/or The Maher 7 Up Company, through its agents, Richard (Dick) Frazee and E. F. Chouquette, visited all of the customers obtained by these plaintiffs using the information gained through plaintiffs' association with these defendants as exclusive agents, notifying said customers that these plaintiffs no longer represent said defendant company, and have no further authority to vend said product; that all of said defendants through their actions and through information surreptitiously obtained deprived these plaintiffs of the benefits of their said contract, and in addition, damaged plaintiffs' business with other products in said establishments causing damage to the extent of $500.00 in this manner. * * *

2.

"That the defendant company has since the 17th day of July, 1936, shipped at least two thousand cases of its product into the plaintiffs' territory aforesaid, upon which they are entitled to a brokerage commission of $500.00, no part of which has been paid.

3.

"That the defendant company wrongfully and in violation of its agreement with the plaintiffs, failed and refused to ship merchandise in the territory for which they held exclusive agency as aforesaid, from and after the 17th day of July, 1936, through these plaintiffs, thereby preventing the plaintiffs from making sales to their customers contacted by them in said territory, and thereby preventing the plaintiffs from earning their profits through said contract; and that the defendant did wrongfully and without right of authority and without the consent of these plaintiffs, transfer said agency to another person, the defendant E. F. Chouquette, and that said defendant, E. F. Chouquette, did without the plaintiffs' consent sell and distribute said product in the plaintiffs' territory to the plaintiffs' customers while the plaintiffs were the defendant company's agents as aforesaid; that these plaintiffs are informed and believe that the defendant company shipped at least two thousand cases of its product into the territory in which these plaintiffs had exclusive agency and on which these plaintiffs were entitled to their commission, thereby damaging said plaintiffs in the sum of $500.00, being the sum which would have been earned by these plaintiffs less the cost of delivery and distribution.

"That by reason of said defendant's breach of contract and failure to perform, these plaintiffs have been damaged in the total sum of Fifteen ($1,500.00) Hundred Dollars, said damage including the expense, work and labor expended by plaintiffs in preparation of the fulfillment of said oral contract and by way of damages through the breach by these defendants in selling said product in plaintiffs' territory, with interest thereon at the rate of five per cent from September 1, 1936, no part of which has been paid.

"Wherefore, plaintiffs demand judgment against these defendants and each of them for the sum of Fifteen Hundred ($1,500.00) Dollars, with interest at six per cent from the 17th day of July, A. D. 1936, and for costs of this action."

This petition was verified and filed on August 31, 1936.
According to his affidavit of merit, which is not denied,

James B. Ryan, an attorney of Des Moines, got in communication with Will J. Hayek, attorney for plaintiff, shortly after the suit was commenced, and notified him that he represented the defendant, Maher, and that E. A. Baldwin, an attorney, at Iowa City, would represent the defendants locally. Ryan also states, in said affidavit, that he communicated with Baldwin and told him to try to settle the litigation for a nominal amount. The record discloses no further pleadings filed in the case, and no further action of any kind taken, except the filing of a trial notice by the plaintiff for the May, 1937, term, until May 8, 1937, when a special appearance was filed for J. B. Maher, by his attorneys, James B. Ryan and E. A. Baldwin, for the sole purpose of objecting to the jurisdiction of the court, and praying dismissal of the action as to him. This special appearance alleged that J. B. Maher was not a resident of Johnson county, Iowa, and was not maintaining an agency there at the time of the commencement of the action, either through E. F. Chouquette, or anyone else. It was supported by an affidavit of Chouquette.

At the same time the same attorneys filed a motion to strike from the petition certain allegations, on behalf of the defendants, Frazee and Chouquette. On June 10, 1937, a hearing was had before the court, Honorable H. D. Evans, presiding judge, on the special appearance, and it was overruled, and the defendants were directed to plead further within 5 days. At the same time the motion to strike was overruled, with the same direction to plead.

The court calendar, in this cause, noting Will J. Hayek, attorney for the plaintiff, and E. A. Baldwin, for defendants, has this notation:—

"7    16    37                    Court Minutes

All defendants shall plead herein by noon of July 21, 1937. If no pleading is then on file default will be entered. Clerk shall notify E. A. Baldwin of this order by U. S. mail forthwith."

"Notice sent 7   16   37

Nothing further appears of record to have been done until

July 21, 1937. On that date E. A. Baldwin, as attorney for J. B. Maher, perfected an appeal to this court, from the ruling of the trial court on June 10, 1936, overruling the special appearance.

No pleading was filed or further action was taken in the suit, except the filing of a trial notice by plaintiff for the November, 1937, term, and the following notation on the calendar sheet in said cause:—

"11   8   37.   Defendants granted five days in which to plead or default will be entered. Atty. for pltf. shall notify Atty. E. A. Baldwin for defendants by telephone of this order forthwith."

The attorney for plaintiff made affidavit that he so notified Baldwin by telephone on November 8, 1937, and the following morning saw him in person and notified him of the court's order. The record is silent as to any response by Baldwin.

No action of any kind had been taken, either in this court or in the trial court, for any stay of proceedings in the trial court. Counsel for the appellant contends that, while there was no agreement for any stay of proceedings, the plaintiff voluntarily took no action, but was awaiting the termination of the appeal. A letter written by Hayek to James B. Ryan, on November 10, 1937, gives support to this inference. This letter is as follows:

"Last June, E. A. Baldwin, who represents the Maher 7 Up Company, took an appeal to the Supreme Court from the adverse ruling in the District Court of Johnson County, Iowa. Upon checking up I find that the appeal has never been perfected and more than four months has elapsed. This is to notify you that I shall ask for default for failure to plead further unless an answer is on file on or before November 12th."

The time for filing abstract did not expire until November 19, 1937.

This letter was received by James B. Ryan, according to his affidavit, upon his return to his office, from court work in Audubon, on Saturday, November 13, 1937. Upon ascertaining that default had not yet been taken, Ryan wrote to Baldwin

and to Hayek, on November 13th. The letter to the latter being as follows:

"I received yours of November 10th upon my return to the office today. I have written to Ed Baldwin asking that he look after the matter. I would appreciate it if you would hold matters in abeyance in the event he happens to be out of town Monday. Frankly, I have a case up for oral argument in the Supreme Court Wednesday that I don't know very much about and I would like to put in a couple of day's work to learn something about it. So, for that reason, I hope that in the event Ed is out of town Monday, that you will wait until he returns and reads my letter."

Ryan received no response to either letter. Hayek received the letter on November 15, 1937, but previously on the same day, he states that he had already taken default and judgment.

The judgment entry recites: the hearing before Judge Evans; the appearance of the attorney for the plaintiff; that no one appeared for defendants, and all were adjudged in default for failure to plead as ordered by the court on November 8, 1937; that "Now there is trial to the court, evidence is offered and the court finds for the plaintiffs and that plaintiffs have been damaged in the sum of $1500 by the actions of J. B. Maher, doing business as The Maher 7 Up Company, substantially as set forth in plaintiff's petition. Judgment is therefore rendered against J. B. Maher, doing business as The Maher 7 Up Company, for $1500 with interest at 5% per annum from date of judgment and for the costs of this action * * * taxed at $19.15."

The record shows no judgment with respect to Frazee or Chouquette. The latter was the important witness in proving damages for the plaintiff. Appellant's affidavit of merits states that he had terminated his relationship with Chouquette on November 1, 1937, because of his bad checks, to the amount of several hundred dollars, which he had given the appellant.

James B. Ryan, in his affidavit, states that he first learned of the judgment, on December 15, 1937, from a transcript thereof to the clerk of the district court of Polk county, and on the following day went to Iowa City and took up the matter of

having the case reopened, with Hayek in Judge Evans' court. Nothing came of this attempt.

On January 13, 1938, which was in the same term at which the judgment was entered, the appellant filed his motion to set aside the default and judgment. It was supported by an affidavit of merits of the appellant, and affidavits of James B. Ryan, and of three others alleging knowledge of the matters involved. The motion and affidavits set out allegations of facts which make a prima facie showing of a good defense, and a reasonable excuse for the default. In the motion, appellant alleged that he was ready and willing to plead forthwith or within such time and under such conditions as the court might deem just and proper. According to the motion and affidavits the arrangement with the appellee was for no definite length of time, but was a tentative one, the continuance of which was dependent upon the appellee meeting the conditions demanded by appellant. Appellant states that these conditions were not met. The appellee, in neither petition nor proof, claimed that the alleged contract covered a definite period.

Resistance to the motion was filed by appellee, and hearing was had during the term, on January 29, 1938, with consent of counsel that ruling could be made and entered after the adjournment of the November, 1937, term. On February 24, 1938, the order and judgment of the court overruling the motion was made and entered. In it the court stated:

"It appears to the court that defendant J. B. Maher and his counsel have been guilty of inexcusable carelessness and forgetfulness and lack of diligence and inactivity in this cause for failing to file the necessary papers in the Supreme Court, for failing to file supersedeas bond or to obtain a stay order if they intended to perfect the appeal and, if they did not so intend, for failure to plead in this court pursuant to its orders aforesaid of which they had notice.

"There was nothing to halt or restrain the further prosecution of this action in this court at any time and the court is of the opinion that defendant has failed to show any reasonable grounds that would warrant this court in setting aside the aforesaid default and judgment."

Notice of appeal in proper form signed by James B. Ryan,

as attorney for J. B. Maher, reciting that the appellant "has appealed from the ruling of said court, rendered in the above court on the 24th day of February, 1938, and journalized in Volume KK 29 at page 13 on that date, as well as all other rulings, findings and orders adverse to said defendant, to the Supreme Court of Iowa, * * *." The attorney for the appellee accepted service of this notice on June 11, 1938, and the appeal was perfected by filing the notice with the service noted thereon, in the office of the clerk of the district court of Johnson county, Iowa, on June 20, 1938.

I. Appellee insists that "any error which appellant claims with reference to the hearing held by the court on November 15, 1937, has been waived, since appellant has lost his right to appeal from this hearing and the judgment rendered. * * * In other words, any ground for appellant's motion to set aside default and judgment based upon error claimed to have been made by the trial court in the trial and hearing on November 15, 1937, has been waived because of his failure to take an appeal from said judgment on November 15, 1937."

Appellee's premise is correct, but his conclusions are erroneous. It may be conceded that any purported appeal from the judgment of November 15, 1937, was not timely, and that such an appeal is not before us for review. But it does not follow that all errors in the judgment proceeding have been waived, and that any such errors, and the validity of that judgment cannot be reviewed on the appeal which is before us. The procedure to be followed by an appellant in a matter of this kind is provided in section 11589 of the Iowa Code. Appellant filed motion and affidavit as provided therein. His motion was overruled on February 24, 1938, and his appeal from the ruling, on June 20, 1938, was timely. The order and judgment was an appealable one. Sections 12822, 12823, Code of Iowa; Baker v. American Railway Express, 207 Iowa 1350, 244 N. W. 513. In his motion he specifically called attention to the variation and the inconsistency between the claims on which appellee based recovery in the allegations of the petition, and the judgment entered and the proof in support of that judgment. The error of the court was thus called to its attention. It refused the opportunity to make correction, and the error is properly before us for review. Section 12827, Code 1935.

█ The situation here is analogous to and in no wise different from an appeal from an order overruling a motion for new trial, based upon errors in the trial. We have many times held that such errors are reviewable on appeal, even though no appeal was taken from the judgment. Speaking through Justice Donegan, in Spaulding v. Miller, 216 Iowa 948, 949, 249 N. W. 642, we said:

"It seems well established by the holdings of this court, however, that, where an error occurring during the trial of a case is set out as a ground in a motion for new trial, which is overruled by the trial court, such error can be reviewed upon an appeal from the order of the court denying such new trial, even though no appeal is taken from the judgment and verdict. Mueller Lumber Co. v. McCaffrey, 141 Iowa 730, 118 N. W. 903; McElfresh v. McElfresh, 186 Iowa 994, 173 N. W. 259; Frett v. Holdorf, 201 Iowa 748, 206 N. W. 609."

Like holdings may be found in Jahr v. Steffen, 187 Iowa 168, 174 N. W. 109; Lotz v. United Food Markets, 225 Iowa 1397, 283 N. W. 99; Keeney v. Chicago B. & Q. Ry. Co., 183 Iowa 522, 167 N. W. 475; In re Estate of Fetterman, 207 Iowa 252, 222 N. W. 872; Pride v. Interstate Business Men's Assn., 207 Iowa 167, 216 N. W. 62, 62 A. L. R. 31.

II. It will be noted that in what we have designated as paragraph 1 of the petition, the appellee alleges that defendants, by their conduct among appellee's customers, deprived appellee of the benefits of their said contract, "and in addition, damaged plaintiffs with other products in said establishments causing damage to the extent of $500.00 *in this manner.*" (Our italics.) The record discloses no proof whatsoever to establish this claim for damages.

In paragraph 2 of the petition, appellee alleged that since July 17, 1936, the appellant had shipped at least 2,000 cases of its product into appellee's territory, upon which the appellee is entitled to a *"brokerage commission"* of $500. There is no evidence whether the bottles contained 7, 12 or 24 ounces. (Italics ours.)

In paragraph 3 of the petition, appellee alleged that appellant refused to ship his product to appellee after July 17, 1936, but shipped to Chouquette two thousand cases thereafter, which

284

he sold in their territory, and for which sales the appellees "are entitled to their *commission*, thereby damaging said plaintiffs in the sum of $500, being the sum which would have been earned by these plaintiffs less the cost of delivery and distribution."

Under any fair and reasonable construction of paragraphs 2 and 3 the appellee was claiming two commissions or two profits on the sale of the same two thousand cases in the period from July 17, 1936 to September 1, 1936. The claim in either paragraph was a duplicate of the other. Under its petition the appellee was claiming only damages suffered in the past, for the period between the last-mentioned dates. Its petition was verified and filed on August 31, 1936. It made no claim for damages for loss of future commissions or profits. Under its alleged contract it was to receive a commission of 20 cents a case. In proving damages it admitted and offered proof that its net profit was 15½ cents a case. Giving appellee's testimony its most favorable construction, the appellant sold 450 cases a week, or 2,700 cases for the 6-week period for which it claimed damages. At 15½ cents a case the total damages which it proved, under the allegations of its petition, were $418.50.

This is the testimony, and all of the testimony, upon which the court rendered judgment for the appellee:

"Examination by the Court:

"Q. How many cases were you selling and delivering per day, say on the 20th day of July, 1936? Do your books show that? A. (Powell Rayburn) I can't tell you, it was around two hundred a week, I believe, two hundred and fifty.

"Q. Do you have any record showing what business you were doing at that time? A. I haven't got them with me. It was around two hundred and fifty, two hundred, about two hundred and fifty a week.

"Q. (Mr. Hayok) Would you say you were selling an average of two hundred and fifty cases per week? A. (Powell Rayburn) That is the way our sales run a week.

"Q. (By the Court) Well, you can, you say you sold two hundred or two hundred and fifty cases per week along in July, 1936? A. (Powell Rayburn) I would imagine around two hundred and fifty cases.

"Q. You imagine, how certain are you? A. I am certain

it was around that. Mr. Chouquette can tell you how many he sold after he took it over.''

''Examination of Mr. Chouquette:

''Q. (Mr. Hayek) What would your sales run per week during July and August and September, 1936? A. (Mr. Chouquette) They would run close to four hundred to four hundred and fifty cases per week but it would fall off in the dead of winter.''

▆ ▪ It is true, that when a defendant defaults, the plaintiff becomes entitled to certain advantages. But such failure by the defendant does not enlarge his claim nor broaden his rights under the allegations of his petition. His right of recovery and the amount and nature thereof is still limited by those averments. Though a defendant may default, he is still within the pale of the law and is entitled to just treatment. He has a right to expect and to demand that plaintiff's recovery shall be confined, and responsive, to his pleaded demand. The legislature has assured him of that right, whether he answers or does not answer, by section 11,573, Code 1935, which provides:

''What relief granted. The relief granted to the plaintiff, if there be no answer, cannot exceed that which he has demanded in his petition. In any other case the court may grant him any relief consistent with the case made by the petition and embraced within the issue.''

As stated in Johnston v. Myers, 138 Iowa 497, 500, 116 N. W. 600, 601:

''But the relief must be consistent with the facts pleaded; for the defendant is entitled to his day in court upon the issues joined.''

And in Bottorff v. Lewis, 121 Iowa 27, 33, 95 N. W. 262:

''The relief granted must always be consistent with the case made by the petition and embraced within the issues. * * * We have uniformly held that it is error for the court to grant relief not called for by the petition, or a judgment or decree different from that prayed for.''

In Martin v. Bennett Loan & Trust Co., 181 Iowa 100, 107, 161 N. W. 639, a default case, we said:

"It is fundamental that courts, in granting relief, cannot go outside of the issues tendered and grant relief not involved in the suit or prayed for in the action, and on default it is equally true that no relief can be granted against the party served with notice, except as against those rights which the notice called upon him to defend, or which, as a reasonably prudent man, he had reasonable grounds to believe would be called in question in the proceedings instituted."

In Oviatt v. Oviatt, 174 Iowa 512, 520, 156 N. W. 687, we said:

"The rule in such cases is that, upon default of defendant, plaintiff is confined to the allegations of his petition, and the proofs in support thereof. * * * The difficulty with this position is that there are no such allegations in the original petition and no testimony whatever in the record to substantiate the claim."

"A judgment or decree is only final for its proper object and purpose, and this object or purpose is derivable, primarily, from the case made by the pleadings." Standish v. Dow, 21 Iowa 363.

In Skvor v. Weis, 153 Iowa 720, 731, 134 N. W. 85, this court said:

"A defendant in default is not an outlaw. He is still entitled to 'equity' as it shall appear from the 'pleadings and proofs'. Code, section 3793. The plaintiff is still bound by the allegations of his petition."

Other cases in point are: Tice v. Derby, 59 Iowa 312, 13 N. W. 301. Manassa v. Garland, 200 Iowa 1129, 206 N. W. 33 (default); Hines v. Horner, 86 Iowa 594, 53 N. W. 317; Johnson v. Mantz, 69 Iowa 710, 27 N. W. 467 (default); Neilan v. Lytle Inv. Co., 223 Iowa 987, 274 N. W. 103 (default); Fidelity and Cas. Co. v. Bank of Plymouth, 213 Iowa 1058, 1062, 237 N. W. 234; Heins v. Wicks, 102 Iowa 396, 71 N. W. 345 (default); Bennett v. Greenwalt, 226 Iowa 1113, 286 N. W. 722.

It is strenuously argued that appellant has not excused his default. Granting this, for the sake of argument only, he

is still entitled to the relief prayed for. In Mickley v. Tomlinson, 79 Iowa 383, 386, 41 N. W. 311, we said:

"It was contended, however, that, as appellant showed no excuse for his default, he could neither move for the modification of the judgment, nor have it reviewed on appeal. That position would doubtless be correct, if appellant were seeking to interpose a defense, or to secure the modification of the decree upon some ground not shown by the record. But he is not attempting to do that. The facts upon which he bases his claim for relief are all shown by plaintiff's petition. The mortgage was attached as an exhibit, and the fact that appellant was a subsequent purchaser was shown by proper averment. The error in the judgment consists in the fact that plaintiff is awarded relief to which he did not show himself entitled by the allegations of his petition and which he did not demand. Upon the allegations of the petition, he was entitled to judgment for the sale of the property purchased by the appellant, for the satisfaction of one thousand dollars of the indebtedness, provided that amount remained unsatisfied after the other property was exhausted, and, if not, for the remainder less than that, whatever it might be. Against that claim appellant had no defense, and consequently he had no occasion to make any appearance. On that state of facts it is clear, we think, that he was entitled to appear after the judgment, and move for its modification. If that were not true, it would follow that, although he had no defense against the claim, as made in the petition, he is without remedy against the judgment erroneously rendered upon it, under which his property may be appropriated for the satisfaction of a portion of a debt which was not a lien upon it when he purchased. That such a result would be inequitable is manifest; and it is equally clear, we think, that a party cannot be denied relief against a judgment which would lead to such results, and which is not warranted by either the averments or the prayer of the petition."

See, also, Blain v. Dean, 160 Iowa 708, 719, 142 N. W. 418. For authority generally on this question see 37 C. J., sections 363, 411, 413; 33 C. J., sections 89, 92, 93; Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 L. R. A., N. S., 803, 118 Am. St. Rep. 612, 11 Ann. Cas. 348.

We have the greatest respect for the eminent ability and fairness of the trial court, and we do not in any way condone laxity on the part of attorneys. In keeping with the practice of this court in favoring litigants in the opportunity of having their controversies tried on the merits, and because of the entire record herein, and particularly the error and irregularity in the judgment itself, it is our conclusion that the order and judgment appealed from ought to be and it is hereby reversed and remanded. Appellant's motion to dismiss appeal having been overruled on May 1, 1939, we have given no further consideration to it.—Reversed and remanded.

HAMILTON, RICHARDS, STIGER, SAGER, and MILLER, JJ., concur.

OLIVER, C. J., and MITCHELL, J., dissent.

OLIVER, C. J. (dissenting)— I respectfully dissent. This suit was started for the September, 1936, term of the district court. After several terms had passed during which appellant failed to appear or plead, a special appearance was, on May 8, 1937, entered for him by attorneys James B. Ryan and E. A. Baldwin. On June 10, 1937, the court overruled this special appearance and ordered appellant to plead within 5 days. Appellant did not comply with this order. On July 16, 1937, the court ordered him to plead by noon of July 21, 1937, under penalty of default, of which attorney Baldwin was given notice. This order also was ignored, but on July 21, 1937, appellant, through attorney Baldwin, appealed from the order overruling his special appearance. No supersedeas was filed and no stay was sought. Nor did appellant ever take any steps to prosecute said appeal. On November 8, 1937, the court again ordered appellant to plead within 5 days under penalty of default. In accordance with the further order of court attorney Baldwin was promptly notified, both by telephone and by personal conversation. No pleading was filed, and on November 15, 1937, default was entered.

I think the trial court rightly found appellant and his counsel had been "guilty of inexcusable carelessness and forgetfulness and lack of diligence and inactivity."

The basis of the majority holding appears to be that appellant was not given sufficient opportunity to act after the

order of November 8, which required a pleading within 5 days under penalty of default. I do not agree with this. Under the order of July 16, default might properly have been taken at any time after July 21, and without further notice. Appellant had then lost his right to object to default in the absence of pleading or a definite agreement prior to such default. No such agreement appears. The belated letter of attorney Ryan, after he also had been advised of the order of November 8, did not constitute an agreement for further delay. This letter merely asked for time to notify attorney Baldwin. But Baldwin had already been twice notified of the order of November 8. That fully complied with the request made in Ryan's letter. Even though it had been received before default was taken the letter would not have altered the situation since the attorney for appellee knew Baldwin had been personally informed of the order several days before.

The record contains no denial by Baldwin that he was at all times kept fully advised of the orders of the court. No affidavit was secured from Baldwin, the attorney who was in active charge of the litigation for appellant. Its unexplained absence gives rise to the inference that he was fully cognizant of every order made, and that he knew of no circumstances which would bolster the effort to set aside the default.

The writer of this dissent does not construe our previous holdings as sustaining the view of the majority that a record of this character evidences an abuse of discretion in the refusal to set aside a default. It is the duty of a trial court to require that litigation be conducted in a prompt and orderly manner. This cannot be effectively performed without support from appellate courts. For this reason rulings involving such functions should be sustained unless clearly erroneous. Any other course would tend to impair the power of a court to properly control the conduct of parties and matters within its jurisdiction.

If the judgment in this case was not fully supported by the pleadings it might have been reduced in amount or set aside and resubmitted for further proof as upon default. The ruling expunging the default in effect pardons appellant's failures to comply with repeated orders of the trial court and thus permits him to profit by the delay which resulted from the negligence of his own attorneys.