FRANK PITZENBERGER et al., Appellees, v. AGNES SCHNACK, Appellant.

No. 41601.

DECEMBER 13, 1932.

Russell E. Ostrus and Frank W. Edwards, for appellant.

John H. Meyers, for appellees.

ALBERT, J.—On the 11th day of August, 1927, there was born to the defendant, Agnes Schnack, a girl baby, which child was born out of wedlock. The mother's occupation was that of maid·

servant and cook. She had been employed for a number of years in this service and was so engaged at the time of the birth of the child, who is known in the record as Mary Agnes Schnack.

In October, 1927, defendant took the child to visit some relatives at Reinbeck, Iowa, and on the train became acquainted with the appellee Julia Pitzenberger. The Sunday following, the mother and baby appeared at the Pitzenberger home in Waterloo where defendant eventually became a house servant, keeping her baby with her. She was paid a weekly wage. The Pitzenbergers were engaged in conducting a beauty salon in the city of Waterloo, and were usually away from home from early in the morning until late at night. Defendant continued to work as such house servant until September or October, 1929, when she took the baby to Council Bluffs to look up its father. She was gone two weeks, leaving the personal belongings of herself and child at the Pitzenberger home. After spending about three weeks in Council Bluffs, she went to visit some friends at Colesburg, Iowa, and after her return therefrom, took the child to Des Moines. About five weeks thereafter, Mrs. Pitzenberger sought her in Des Moines and asked her to bring the baby back to Waterloo, telling her they would help her to get work. This was about November 1, 1929. Defendant returned to Waterloo, but the Pitzenbergers left her and the baby at a hotel, refusing to take them into their home. No work was furnished, and she asked permission to leave the child with them while she went to Des Moines to arrange for a home for herself and the baby. On November 23, 1929, she returned to Waterloo to get the baby, and Mrs. Pitzenberger refused to let her have the child, forcibly ejected her from her home, called the police, and defendant was subsequently arrested and held in jail without warrant, until November 25, 1929, when a charge of insanity was lodged against her by a deputy sheriff. A hearing was had before the commissioners of insanity of Black Hawk county, she was adjudged insane, and committed to the Hospital for the Insane at Mt. Pleasant.

At the time the defendant was ejected from the Pitzenbergers' home, they were in possession of the child and refused to allow her to take it.

On November 24, 1930, defendant was paroled from the State Hospital by the authorities to her father, Henry Schnack, of Prescott, Wisconsin. When she was released under the parole, she immediately went to see her daughter at Waterloo, but the Pitzenberg-

ers, having learned of her arrival, took the child out of town. She then went to Des Moines, secured regular employment, and through an attorney, sought to recover the possession of her child. She went to Waterloo and with the aid of Mrs. Mary Sheridan, Salvation Army religious worker, went to the Pitzenbergers' home to get the baby. They refused to allow her to take the child. This was in March or April, 1931. Several demands were made on the Pitzenbergers after this for the possession of the child, which demands were always refused.

On August 6, 1931, the Pitzenbergers filed a petition in the Black Hawk District Court, alleging that Agnes Schnack, defendant, had abandoned her child, Mary Agnes, and asking permission of the court to adopt the said Mary Agnes; and on the same day the court made an order that "said application be set down for hearing before the undersigned, one of the Judges of the District Court of Iowa, Tenth Judicial District, at the Court House in Waterloo, Iowa, forthwith, notice of which hearing is waived by the Court and the investigation as is required by Section Two, Chapter 218 of the 42d General Assembly is waived by the Court."

On the same day judgment was entered reciting that notice was waived, "and all the evidence having been considered," the court found that the allegations of the petition were true; that Agnes Schnack, the mother, had abandoned said child, and she was a resident of Polk county, Iowa. Other findings were made, and the judgment contained this provision:

"It is therefore ordered and decreed that from the date hereof the above mentioned child shall be the child of the petitioners, and the name under which the child shall hereafter be known is Mary Pitzenberger."

On the 17th of September following, Agnes, the mother, made application to vacate the judgment and dismiss the petition. Numerous grounds are alleged therein, among which are that Agnes, the mother, never abandoned said child; second, that a fraud was perpetrated upon the court by the Pitzenbergers in their petition by alleging and claiming that she had so abandoned said child; that the validity of the proceedings authorized by statute was unconstitutional and void, not providing for due process of law, in that no notice whatever was served upon the mother, Agnes, although her residence was known; that the provision of the statute providing for

waiver of notice was unconstitutional; and that the judgment was void because no guardian *ad litem* was appointed.

Numerous interesting questions are raised as to the validity of this proceeding and the constitutionality of the law. As to the constitutional question, we pass the same without expressing any opinion thereon because of what is subsequently said in the opinion.

One fact which should have been previously stated is that Agnes, the mother, was discharged from the hospital at Mt. Pleasant by the proper authorities as fully recovered on August 22, 1931.

Assuming, but not deciding, that the law in controversy, to wit, contained in Chapter 541, Code 1927, is constitutional, the question is: Was the court warranted in making the order it did, based wholly on the ground that Agnes, the mother, had abandoned this child? We are not favored by an argument by the appellees in this case and hence are not able to determine just what their contentions are and were.

The application to set aside the judgment and dismiss the petition is, of course, a direct attack upon the judgment of adoption. Remembering that the burden is upon the applicant so attacking said judgment, we have reviewed the record, the principal part of which has heretofore been set out in the statement of facts, which is practically undisputed.

It is fundamental that the jurisdiction of the district court of Black Hawk County did not exist in this case, especially where no notice was given to any person, if it existed at all, by reason of the fact that Mary Agnes was an abandoned child. After reading the record carefully, we reach the conclusion that there is no evidence whatever showing that Mary Agnes had been abandoned by her mother, but on the other hand, it shows, quite satisfactorily, that she never was so abandoned.

■   The mother of an illegitimate child is entitled to its custody, service and earning. Allison v. Bryan, 109 Pac. (Okla.) 934; Purinton v. Jamrock, 18 L. R. A. (N. S.) (Mass.) 926.

■   To constitute an abandonment, there must be a "relinquishment or surrender of rights or property by one person to another; a giving up; a total desertion. It includes both the intention to abandon and the external act by which the intention is carried into effect." Vol. 1, Words & Phrases, p. 5.

"In a technical sense, the word means the relinquishment of

a right; the giving up of something to which one is entitled; the giving up of a thing absolutely without reference to any particular person or purpose." Ballentine Law Dictionary p. 1.

Many cases have defined the term "abandonment" as used in the law, but in all of them will be found that intention is an element of abandonment. As applied to the facts in this case, there is no showing that there was ever any intention on the part of the mother to abandon this child, and in addition to this, the evidence shows that she was under a judgment of insanity for over a year, and was not discharged therefrom as recovered until after the adoption proceedings. Being insane, she was not in a position to have or exercise the intention which is necessary to abandonment. The real truth of the matter, as reflected by this record, shows that she at all times was demanding the child, and these demands were never acceded to by the Pitzenbergers; and it rather looks as though the whole proceeding was an effort to deprive her of her child. We conclude, therefore, that the district court erred in refusing to set aside this judgment of adoption and in not dismissing the plaintiffs' petition for such adoption. The case is remanded to the district court with directions to set aside the judgment of adoption and dismiss the petition.—Reversed and Remanded.

STEVENS, C. J., and FAVILLE, DE GRAFF, and WAGNER, JJ., concur.