Susan MOEN, Plaintiff-Appellee,

v.

Nicholas McNAMARA,
Defendant-Appellant,

and

Glenn L. Norris, Next Friend of Micah James McNamara, Nicholas Joel McNamara, Patrick John McNamara and Shannon Jo McNamara, Intervenors-Appellants.

No. 2–61567.

Supreme Court of Iowa.

Dec. 20, 1978.

Glenn L. Norris, of Hawkins & Norris, Des Moines, for defendant-appellant.

Lewis H. Jordan, of Webster, Jordan, Oliver & Walters, Winterset, for intervenors-appellants.

Thomas P. Lenihan, Asst. Polk County Atty., for plaintiff-appellee.

Considered by REES, P. J., and UHLENHOPP, HARRIS, McGIVERIN and LARSON, JJ.

LARSON, Justice.

Father in paternity action, chapter 675, The Code, appeals from portion of judgment ordering him to pay toward past and future support of Jason, the child of the parties. We affirm the trial court.

Jason, who was born on September 13, 1976, is in the custody of his mother, but the defendant has custody of four children, herein occasionally referred to as the McNamara children, granted to him in a divorce decree of September 3, 1969. By prior order of the trial court, these children were allowed to intervene in the paternity action through the defendant's attorney as their "next friend." These children, who included twins, were 12, 14(2) and 15 years of age at the time of trial.

Plaintiff began an action for paternity and obtained a judgment against defendant, under chapter 675, The Code.

Defendant did not appeal the provisions of the order finding him to be the father of the child, and he will be so referred to herein. The father contends he should pay a reduced amount of support, if any, and challenges the sufficiency of the evidence to support the trial court's award. He also contends the court erred in failing to apply proper principles of law.

Appellant contends that this court in discussing support amounts under paternity actions has referred to decisions in dissolution cases, and that we should therefore view the evidence upon the same basis, de novo. We reject this invitation for two reasons. First, the principles guiding determinations of child support, i. e., weighing needs of the children against the means of the parents, are identical, regardless of the form of the action brought to collect it. This is the apparent reason they are referred to in paternity cases—not to adopt their de novo scope of review. Second, the statute, § 675.18, provides this is an ordinary proceeding and our cases recognize that our review is only upon error—not de novo. We are therefore bound by the trial court's judgment in a paternity action, if it is supported by substantial evidence. *Wehling v. Rottinghaus,* 204 N.W.2d 592, 593 (Iowa 1973); *State ex rel. Brown v. Middleton,* 259 Iowa 1140, 1141, 147 N.W.2d 40 (1966). To determine whether there is substantial evidence to support it, the evidence is viewed in the light most favorable to the judgment, although we are not bound by the trial court's determinations of law. *Kurtenbach v. TeKippe,* 260 N.W.2d 53, 54 (Iowa 1977).

The record discloses that the father was 38 at time of trial and was employed as a clerk-bookkeeper. His own testimony regarding his earnings showed $242.63, net per week, plus unemployment compensation and overtime pay, amounts of which are not set out in the record. He has custody of the four McNamara children, has monthly mortgage payments for his home of $137.55,

and an additional $116.25 per month on a home improvement loan. He has no other monthly installment payments, and no other debts except current living expenses, and one-half of the tuition for the four McNamara children in his custody, who attend parochial school. His total expenses, including his share of the tuition, are approximately $80 per month less than his income. His former wife, mother of the four children in his custody, contributes $61.04 per month as her share of their parochial school tuition. Her contribution is voluntary; she was not ordered to pay any child support in the original decree (affirmed in this court in *McNamara v. McNamara*, 181 N.W.2d 206 (Iowa 1970)). There is no evidence the father has attempted to modify this decree to obtain a greater contribution from her toward child support.

Jason's mother testified that her net income of $406.35 was subject to payment of expenses for her and Jason of $478.00 per month, including $120 for a babysitter for him, or a deficit of $71.71.

Based upon the evidence presented, the trial court ordered the father to pay, for support of Jason, $20 per week to age five, then $25 per week to age 16. He also entered judgment for the mother for $500 to reimburse her for support from his date of birth to date of the judgment entry, December 22, 1977. Expenses of prenatal, birth, and postnatal medical care were apparently paid from another source, and plaintiff made no claim for them here. We conclude there was substantial evidence to support the trial court's awards.

Appellant argues that the court erred as a matter of law in five respects:

(1) That the award for Jason reduces the amount available for the care of the four McNamara children in his custody; that the district court has a "continuing duty" for their support under § 598.21, The Code, by reason of the dissolution decree, and this award violates that "duty";

(2) That the court "failed to recognize" this duty when applying "criteria for support" under chapter 675 (paternity);

(3) That the court failed to "equalize" the income among Jason and the four McNamara children;

(4) That it erred by awarding past support; and

(5) That it erred in allowing any support because the mother had "voluntarily assumed" his full support.

### I and II. The court's "continuing duty" to furnish support.

The first two issues, both concerning the court's "continuing duty to assure adequate support for the McNamara children" under the dissolution decree are very similar. The first raises appellant's claim that the court failed to perform its "duties" under § 598.21 and the second raises his claim that it erred in failing to apply proper criteria in determining support under chapter 675 (paternity). For purposes of expediency they will be treated together.

Appellant's factual basis for these contentions is not clear. He contends that the trial court concluded "that a portion of the McNamara children's support be taken away from them for the benefit of . . . Jason." He further contends that "no where in the judgment entry opinion does the district court even recognize the interests of the McNamara children."

In this respect, it is true that the court order entitled "Judgment Entry" filed on December 22, 1977 did not mention the McNamara children nor the father's duty to support them. In the "Supplemental Findings and Conclusions," however, dated October 28, 1977, the court did recognize these obligations. The findings include these:

(c) Defendant, age 38, is single, having been married previously, and has custody of and supports four children ranging in age from 12 years to 15 years. . . . Defendant of course has substantial living expenses in maintaining a household and supporting four children, including high school tuition for three of the children. It apparently is defendant's position that all his income is used to support himself and his four children by his first marriage and that he has no means with

which to contribute to the support of Jason. . . . It is the court's understanding that in a situation such as here existing, the law contemplates that defendant shall make such adjustments as are necessary to enable him to contribute reasonably to the support of Jason.

If appellant's arguments under Divisions I and II of his brief are premised on the trial court's failure to *consider* his commitments to support his four legitimate children, they are clearly not borne out by the record. The above language shows the trial court was aware of these circumstances and made the award with full knowledge of them. As to his legal basis for objection to the allowance, the specific reasoning is unclear. The "continuing duty of the court to assure adequate support" for the McNamara children relied upon by him is a nebulous generalization of rights and responsibilities regarding children. If it refers to the authority of the court to *modify* a decree under § 598.21, The Code, cited by him, some observations should be made. That section provides:

When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties and the maintenance of the parties as shall be justified. . . . Subsequent changes *may* be made by the court in these respects when circumstances render them expedient. (Emphasis added.)

Jason was not born as of the date of the dissolution decree here, and therefore the first sentence of that statute is inapplicable to him. Apparently the father's reliance upon § 598.21 is under the second sentence regarding the court's authority to modify it. It shall be noted that this is a paternity action under chapter 675, The Code. The prior action was for dissolution under chapter 598, The Code. The two cases are in no manner related unless, as appellant contends, § 598.21 imposes a continuing duty on the part of the court to monitor the needs of the children.

■ The statute relied upon, § 598.21, mentions no ongoing "duty" and the only arguable basis for saying such duty is imposed by that section is that it provides that the court *may* enter future orders of modification. This section by its plain wording applies only as to the original dissolution proceeding, not a subsequent case involving different parties and different subject matter. The involvement of the trial court in proceedings subsequent to the decree turns on an application, notice and hearing. Appellant here apparently contends the trial court should sua sponte assert future jurisdiction even when, as here, no attempt is made to implement the court's authority to modify under § 598.21. Does appellant mean this section merely demonstrates a legal principle, and is not cited for the actual mechanics it provides for asserting modification jurisdiction? If this is so, and it merely announces a legal principle, i. e., state concern for continual well-being of children in dissolution cases, what happens if the original decree was from outside Iowa, but the children are now living here? What about other children of a paternity defendant who were not included in a prior dissolution decree? Certainly the courts have an interest in the well-being of *all* children under the doctrine of parens patriae. Section 598.21 does not alter or expand that principle in the manner now urged by the appellant; it gives the court the authority, but not the unrequested duty to correct a decree to reflect substantial change in circumstances.

■ We reject appellant's contention that a trial court, in an entirely separate action involving different parties, often in a different district court, without notice to the non-custodial parent and involving entirely different children, should or even could, make any orders to implement or effectuate its "duty" under § 598.21 in a proceeding under chapter 675, The Code. It is, of course, the duty of the court to consider other child-related obligations, including the cost of raising other children in the custody of the party when setting amounts of child support. The general rule is stated as follows in the similar area of dissolutions:

[I]n determining the ability of the father to pay child support the court should take into consideration his obligations with respect to alimony and child support payments under an existing decree, and his expenses in supporting children who remain in his custody or in supporting a child in a divided custody case. 24 Am. Jur.2d "Divorce and Separation" § 840, p. 953.

10 Am.Jur.2d "Bastards" § 122, p. 931 states:

[S]ome courts hold that the only pertinent fact [in setting paternity support] is the defendant's ability to earn, coupled with his property, and that it is error to admit evidence of his debts, while others permit the defendant to show his other financial burdens *such as his dependents.* . . . (Emphasis added.)

*See also*, Annotation "Child Support Award —Adequacy," 1 A.L.R.3d § 10(e) p. 343.

The trial court here considered the father's responsibilities toward the McNamara children. Its findings, as we have stated, have substantial evidence to support them. The court did not err in refusing to apply the concept of its "continuing duty" urged by appellant.

A similar issue was raised in the case of *In Matter of Sarah S. v. John K.*, 70 Misc.2d 803, 335 N.Y.S.2d 124 (Fam.Ct.1972). The mother there sued for support in a paternity action. The father had a wife and three children. In denying his claim that his primary responsibility was to his wife and legitimate children, the court said "nor may the respondent shrug off the responsibility of this [illegitimate] child by urging his liabilities to his other children and wife." 335 N.Y.S.2d at 126.

Defendant contends he cannot pay support as ordered and also pay his other living expenses. In his reply brief, he states "if the district court judgment is upheld, the McNamara children will be forced to lower their standard of living." (The effect on Jason's standard of living, in the event it is reduced, is not mentioned.) When there is not enough money to go around, support payments must have priority. As stated·in

*Kelley v. Iowa Dept. Social Serv.*, 197 N.W.2d 192, 201 (Iowa 1972), the "obligation of [parents] is not to support after payment of debts, but to support." At p. 202, we said, "an indebted stepparent living with the family is required to support the family ahead of paying creditors, just as a natural parent is required to do."

### III. "Equalization" of support.

■ He also contends the court is required to "equalize" the available income among Jason and the four McNamara children. He cites no authorities holding that equality must be preserved in apportioning support for children under these circumstances.

Section 675.1, The Code, provides that the parents of an illegitimate child "owe the child necessary maintenance, education and support." There is nothing in that section nor in any other to indicate this means anything more than or less than the standard in dissolution cases relating to support orders "in relation to the children . . . as shall be justified" under § 598.21, The Code. We therefore give consideration to applicable principles relating to child support under that section.

The firmly established rule in setting child support is that all of the circumstances of the parties must be considered, and a determination made accordingly; precedents are of little value in setting these amounts as each case is different on its facts. *See In re Marriage of Beeh*, 214 N.W.2d 170, 173 (Iowa 1974). *Beeh* held that a trial court was justified in providing for more support for children over 14 than for those under 14, because of their different needs.

Certain fixed expenses for each of these parties here, such as house payments, improvement loan payments, utilities, telephone, union dues, and others, are the same regardless of whether the custodial parent has one or four children to care for. In this case, therefore, it would be illogical for us to assume that Jason, as an only child, could be supported for the same amount as one of the McNamara children.

Each of the cases relied upon to support the "equalization of income" concept of appellant is distinguishable upon its facts. They all require examination of the peculiar circumstances of each case to determine the support allocation. In addition, in only two of them was the reviewing court bound, as we are here, to affirm the support allocations if supported by substantial evidence. The balance of the cases cited are de novo reviews in dissolution cases; even so, none of the cases cited establish or lend support to appellant's theory of equalization of income urged here.

The trial court did not err in refusing to accept plaintiff's "equalization" theory.

### IV. Recovery of past support.

■ Appellant contends the trial court erred in granting judgment against him for $500 for support of Jason prior to trial. He says this amount represents babysitting expenses, for which plaintiff could obtain a tax deduction, and further because she could claim a dependency deduction for him on her income tax return.

Nowhere in the trial court's judgment entry is there any indication this is only for babysitting expense. In this regard, it stated:

[B]etween the birth of the child on September 13, 1976, and November 1, 1977 [beginning date of installment support payments], the plaintiff expended in excess of $1000 in necessary support of said child and that in connection therewith the defendant should reimburse plaintiff in the sum of $500. . . .

Appellant's claim that past support may not be recovered in this action is untenable. Section 675.3, The Code, which provides that "not more than two years support furnished prior to the bringing of the action may be recovered" clearly contemplates that support furnished within two years could be recovered. Section 675.4, providing that other parties who have furnished support for the child may recover them from the father, clearly contemplates that these would be past support expenses.

The general rule as to past support recovery is thus stated in 10 C.J.S. Bastards § 111, p. 193:

Under statutes authorizing a judgment for support and maintenance, the usual practice is to make an order against defendant based on a judgment which shall include a reasonable allowance for the *past*, as well as the future, maintenance of the child, and, unless the statute otherwise prescribes, all of the elements included in the statute for the benefit of the mother should be comprised in a single order. (Emphasis added.)

Here, the action was commenced well within the two years of Jason's birth; his past support may therefore be recovered in this action; and that award by the court was also supported by substantial evidence.

### V. Mother's alleged waiver of support.

■ Appellant's last point is that the mother here has voluntarily assumed the burden of support and therefore may not recover against the father. Jason was born on September 13, 1976, and the action in paternity was filed on November 24, 1976. In his answers to interrogatories dated March 21, 1977, defendant stated:

The plaintiff has called me at least once a week since August, 1976, which calls continue at the present, requesting child support or me to assist her in paying off her debts or money for other purposes.

It is clear from this record that the plaintiff had not relinquished her rights of recovery against the father.

Defendant relies upon *Addy v. Addy*, 240 Iowa 255, 261, 36 N.W.2d 352, 356 (1949), which stated the rule to be that "a divorced wife who voluntarily supports a child cannot, in the absence of an express or implied promise to pay therefor, recover from the husband for past support."

Defendant has two problems here. First, although there is evidence that plaintiff did furnish the sole support for Jason prior to the time she was able to obtain payment from defendant for a portion of it, there is no evidence she ever assumed such burden on a permanent basis or waived her rights

against him; the contrary was true. The record shows she was looking to him for contribution of support even before the child was born. Second, the legal principle of *Addy*, as set out above, has been overruled in the recent case of *Brown v. Brown*, 269 N.W.2d 819, 821–22 (Iowa 1978), which held it was contrary to the weight of authority in other jurisdictions.

We said, at page 822:

Parents have a mutual duty to support their children. Their ability to meet this duty varies with their economic circumstances. . . . Further, nothing in the mutuality of the statutory obligation forecloses a right of contribution between the parents when one has performed a duty the other should in justice and equity have helped with.

We conclude therefore that the trial court applied correct principles of law, and that the judgment was based upon substantial evidence. The case is therefore affirmed.

AFFIRMED.