# IN THE COURT OF APPEALS OF IOWA

No. 16-0350
Filed November 23, 2016

**Upon the Petition of**
**JAUN-PAUL LEE BANNISTER,**
        Petitioner-Appellee,

**And Concerning**
**AMBER DAWN BUBAN,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Mahaska County, Randy S. DeGeest, Judge.

        A mother appeals the district court decision granting the father physical care of the parties' child. **AFFIRMED.**

        Barry S. Kaplan and C. Aron Vaughn of Kaplan & Frese, L.L.P., Marshalltown, for appellant.

        Philip J. De Koster of De Koster & De Koster, P.L.L.C., Hull, and Diane Crookham-Johnson of Crookham-Johnson Law Office, P.L.L.C., Oskaloosa, for appellee.

        Heard by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**BOWER, Judge.**

Amber Buban appeals the district court decision granting Jaun-Paul Bannister physical care of the parties' child, A.B. We agree with the district court's finding the child's best interests are served by granting Jaun-Paul physical care of the child. We affirm.

## I. Background Facts and Proceedings

Amber Buban and Jaun-Paul Bannister began their relationship in 2008 and it was tumultuous from the beginning. Amber became pregnant shortly after the relationship began, and she and her child, H.B., moved in with Jaun-Paul. Before A.B. was born in 2009, the couple had broken up and reconciled, though Amber was still living apart from Jaun-Paul. The relationship was on and off, the couple lived apart occasionally, and shared custody and care of A.B. In 2012, the parties separated permanently. Jaun-Paul then took a job in Oskaloosa, while Amber remained with A.B. in Grinnell.

Visitation issues began to increase and cause friction. During this time Jaun-Paul remained active in A.B.'s life, attending t-ball and wrestling practices and events regularly, even though he lived forty miles away. A civil protection order was filed against Jaun-Paul because of a threat he made after Amber's boyfriend had spanked A.B. Subsequent testimony on this issue showed at least part of Amber's motivation for asking for the civil protective order was a "free" custody review. A no-contact order was entered and a visitation schedule granting alternate weeks to the parents was established. The order expired in January of 2015.

Tensions continued to rise concerning kindergarten. Amber and Jaun-Paul registered A.B. for school in Grinnell and Oskaloosa respectively. Amber claims no agreement had been made concerning where A.B. would attend school, and she registered him to continue classes in Grinnell. Jaun-Paul claims Amber agreed to enroll A.B. in Oskaloosa in exchange for enrolling him in Grinnell for preschool.

In May an incident occurred indicating A.B. may have sexually abused an unrelated child in Amber's care and may have been sexually abused by his half-brother, Jaun-Paul's son. This increased tension between Amber and Jaun-Paul even further. An investigation was conducted which concluded no sexual abuse had occurred. Jaun-Paul employed a counselor for A.B., Jane Kelderman, a family friend and licensed social worker, in order to help A.B. deal with the stress of the investigation.

Jaun-Paul filed a petition for custody in April and mediation was conducted in June. A.B. was to be in Jaun-Paul's care every other week through the duration of the summer, until trial could be held to determine physical care. The trial could not be scheduled before school began and a temporary custody order was issued which granted physical care to Jaun-Paul. As a result, A.B. began kindergarten in Oskaloosa.

The parents have continued to argue over matters surrounding A.B.'s custody, such as the location of exchange of the child and flexibility in scheduling. The trial was held over two days, January 7 and 14, 2016. The district court entered its decree awarding joint legal custody, with physical care to Jaun-Paul. Amber was also required to pay child support. Amber appeals.

## II. Standard of Review

Our review of equitable actions is de novo. Iowa R. Civ. P. 6.907. We examine the record and adjudicate the rights of the parties anew. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). We recognize the district court's unique opportunity to hear the evidence and view the witnesses and so defer to its determinations of credibility. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

## III. Best Interests of the Child

A non-exclusive list of factors has been set out by our supreme court and used to determine the best interests of the child when deciding physical care. *In re Marriage of Winter*, 223 N.W.2d 165 (Iowa 1974). We also consider portions of the Iowa Code. *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). ("Although Iowa Code section 598.41(3) [(2015)] does not directly apply to physical care decisions, we have held the factors listed here as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child."). We apply these factors no matter the martial status of the parents. *Heyer v. Peterson*, 307 N.W.2d 1, 7 (Iowa 1981). We also note "[t]here is no preference for mothers over fathers, or vice versa." *Hansen*, 733 N.W.2d at 696.

### A. Expert Witnesses

Both Amber and Jaun-Paul focus a great deal of their argument on the expert witnesses presented at trial. In its findings of fact and conclusions of law, the district court found Amber's expert's testimony and report was "not a complete and neutral report as the preparer of the report did not meet with Jaun-

Paul, nor is the Court convinced the testing was neutral." Amber's expert testified he had invited Jaun-Paul to be present at A.B.'s testing. However, it is unclear if Jaun-Paul understood or was given clear instructions of what was needed of him. Jaun-Paul testified he had been contacted and asked for records regarding A.B.'s counseling with Kelderman but had not been given other instructions. There was some evidence presented that the test results would not be affected by Jaun-Paul's failure to attend, but we agree with the district court the test results are suspect. However, we do give some weight to the conclusions of the report.

Jaun-Paul's expert, Kelderman, has been a long-time friend of his wife and attended their wedding. Kelderman also served as A.B.'s counselor after a particularly troubling incident. Kelderman submitted a report for the temporary hearing recommending Jaun-Paul be granted custody, without disclosing the nature of her personal relationship with the family. However, at trial Kelderman's bias was effectively disclosed to the district court. Kelderman also conceded she was unable to make an objective recommendation to the court regarding physical care. The district court made no mention of Kelderman's testimony in its ruling. We find Kelderman's bias is too strong to allow us to give any weight to her recommendation regarding physical care. We have only considered her testimony regarding the counseling services she provided to A.B..

**B. Best Interests Factors**

Before determining what physical care arrangement is in the best interests of A.B. we first note, in agreement with the district court, that A.B. consistently attempts to please both parents. However, not inspired by their child's example,

both parents have demonstrated an inability to consistently place A.B.'s best interests and happiness above their own disagreements. Both have attempted to manipulate or deny visitation to punish the other parent in the past. Notwithstanding the parent's behavior toward each other, both parents have proven themselves capable and willing to provide for A.B.'s needs and care.

We also agree with the district court in finding both parents present concerns for A.B.'s custody. Amber has not always shown good judgment in those she associates with and exposes A.B. to, including Amber's sister, who used drugs and attempted suicide in the home while A.B. was present. Jaun-Paul has displayed some inability to control his emotions. He has also been involved in two instances of domestic assault. There are some mitigating factors concerning the domestic assaults. The first incident occurred in 1996 and was described by Jaun-Paul's ex-wife, the victim, as "not a big deal." She did not call the authorities and charges were brought only after hospital staff were required to report it. The second instance, against Amber, resulted in a protective order and centered on an argument about custody and involved no physical assault. None of these failings precludes either parent from care but they do influence our decision.

Amber claims Jaun-Paul has not supported her relationship with A.B. by refusing to allow early pick-up for weekend visits and requiring Amber to pick-up A.B. at the YMCA near Jaun-Paul's house instead of at his residence. Jaun-Paul has been documented confronting Amber, and those with her, during the pick-ups as well as making rude gestures. Jaun-Paul's inflexibility in scheduling and behavior during pick-ups shows a tendency to increase conflict between the

parties which undermines the relationship between A.B. and Amber and must be taken into account when considering physical care. We do not find Jaun-Paul's insistence on a neutral meeting location to be inappropriate. Jaun-Paul is demonstrating reasonable concern by using a neutral location considering the history of conflict between the parties. Jaun-Paul also has a large support group in the Oskaloosa area.

Amber further claims it is in A.B.'s best interest to remain with his half-sibling, H.B., and therefore in Amber's care. Iowa courts have recognized the importance of a relationship between siblings and included it as a factor for consideration in determining physical care. *Winter*, 223 N.W.2d at 166. Testimony at trial was contradictory relating to the relationship between H.B. and A.B. Amber testified H.B. and A.B. get along well and miss each other. Jaun-Paul presented testimony A.B. feels picked on by H.B. and the other children in Amber's house, and he plays in his room alone. While A.B. also has a half-sibling, as well as step-siblings through Jaun-Paul, the half-sibling does not live with Jaun-Paul. This factor weighs in Amber's favor.

While both parents are capable of serving as the sole provider of physical care, we find Jaun-Paul has demonstrated a stronger commitment to A.B.'s best interests, greater stability in routine and relationships, a continuity of care, and ability to focus on A.B. Amber has been a good mother to A.B. but has elected not to exercise her mid-week visitation due to her inability to balance her obligations with her daughter, her boyfriend, and his children. While her dedication to her daughter and family are laudable, being unable to prioritize and

exercise this visitation shows a lack of commitment to A.B.'s best interests.[1] Additionally, the weight of testimony showed Amber's home is less routine based and more chaotic. This environment negatively affects A.B.'s behavior and development.

Therefore, we affirm the decision of the district court.

**AFFIRMED.**

---

[1] The record notes that in a four-month period, Amber exercised mid-week visitation on one occasion.